Buddington
*v.*
Smith.

BUDDINGTON *against* SMITH.

Though the master of a ship in a foreign port has a right, in certain cases, to imprison a mariner under his command on shore; yet he can exercise that right only in cases of flagrant offences, and where there is a positive necessity of removing the offender from the ship to a place of confinement on shore.

The existence of such flagrant offence and necessity of removal, in a particular case, is a matter of fact proper to be submitted to the jury.

THIS was an action of assault and battery and false imprisonment. The defendant pleaded the general issue, with notice of special matter in justification.

The cause was tried at *Norwich, March* term, 1839, before *Bissell*, J.

The defendant, at the time mentioned in the declaration, was master and in the actual command of the whaling ship *Bingham*, then on a voyage; and the plaintiff was, at the same time, a mariner on board that ship. On the trial, the plaintiff having offered evidence to prove, that he had been beaten, by the defendant, as alleged in the declaration; the defendant, in his defence, offered evidence to prove, that the plaintiff, immediately after his chastisement, armed himself with a handspike, and threatened to kill the defendant, if he came near him, and again threatened to kill him, before the voyage was ended. The plaintiff having also offered evidence to prove, that the day after this transaction took place, the defendant went on shore, [at *Tabb Bay*, near the cape of *Good Hope*] and procured a police officer to come on board the ship, and take the plaintiff on shore and put him in prison, where he was confined a number of days, under the direction and by the procurement of the defendant; the defendant offered evidence to prove, that he caused the plaintiff to be carried before a magistrate at *Tabb Bay*, who ordered him to be sent to prison, and that the defendant caused him to be released, as soon as he would behave well and return to his duty. The defendant insisted, that he had good right so to detain and imprison the plaintiff on shore in consequence of such conduct and threats of his, and prayed the court so to charge the jury.

The court instructed the jury, that the master of a ship in a foreign port has a right to imprison a mariner on shore;

but that such right can be exercised only in case of flagrant
offences, and where there is a positive necessity of removing
the offender from the ship to a place of confinement on shore;
and the court left it to the jury to say, whether such offence
had been committed, or whether such necessity existed, in
the present case.

New-London,
July, 1839.

Buddington
v.
Smith.

The plaintiff had a verdict; and the defendant moved for
a new trial for a misdirection.

*Isham*, in support of the motion, contended, 1. That the
charge was wrong in principle. In the first place, if the con-
duct and threats of the plaintiff were such as the defendant
claimed to have proved them to be, he was justified in im-
prisoning the plaintiff on shore. Secondly, if the plaintiff was
imprisoned, by the sentence of a court of competent jurisdic-
tion the defendant is not responsible, unless he acted *mali-
ciously*.

2. That the charge was too general and the ground of
justification was left too vague. The term "flagrant offence,"
is a very indefinite one. The jury might not know what are
its ingredients; and the court did not enlighten them on this
subject. The jury should have been informed whether the
acts of the defendant, which the plaintiff claimed to have
proved, constituted a "flagrant offence" within the rule laid
down.

*Cleaveland* jun., contra, was stopped by the court.

WILLIAMS, Ch. J. The objection to the charge of the
court, in this case, is directed to that part of it, where the
jury were told, that the master of a ship in a foreign port had
a right to imprison a mariner on shore; but that such right
could be exercised only in cases of flagrant offences, and
where there is a positive necessity of removing the party
offending from the ship to a place of confinement on shore.
The defendant objects to the principle of the charge, and to
its generality. He seems to suppose, that because the master
may imprison a seaman on board, he may also confine him
on shore. On the contrary, we believe that very reason is
one why this punishment should not be allowed.

The mariners of a ship at sea are at a distance from all the

*New-London,
July, 1839.*

*Buddington
v.
Smith.*

ordinary restraints of government, and of course, must be subjected to other rules of discipline than those who are under more immediate accountability to law. The master, therefore, is invested with absolute authority; or, at least, a power as great as that of a master over his apprentice, or a parent over his child. His orders, when not unlawful, must be obeyed; and he has a right to compel submission to all reasonable requirements, by any punishment not unusual or dangerous; and of these punishments one of the most common is confinement on ship-board. *The United States* v. *Smith,* 3 *Wash. C. C. Rep.* 523. *Michaelson* v. *Denison &* al. 3 *Day* 294. 3 *Kent's Com.* 181. *The United States* v. *Freeman,* 4 *Mason* 412. The power is a high power, but seems to be absolutely necessary for the protection of the lives and property entrusted to the master of a vessel, while the mariners are removed from all ordinary restraints. But when the ship is in port, there is much less necessity for the exercise of this authority; and still less for the exercise of this authority on shore, especially in a civilized country. The master of a vessel is, and must be, the commander, on board; but on shore, he becomes weak as other men. The discharge of seamen from on board our vessels, in foreign ports, is viewed, by our law, with great jealousy; and is allowed only in cases of extreme necessity. The putting of them in prison, in a foreign jurisdiction, may expose them to the danger of being left to ill treatment from strangers, and endanger their lives, as well as their healths. And it has been held, that it must be an extreme case, which will justify a master in confining a seaman in a common gaol in a foreign port. This he can never do as a punishment; but he may do it, by way of precaution only. *The United States* v. *Ruggles,* 5 *Mason* 192. 3 *Kent's Com.* 182. And in accordance with this idea is the recent opinion of Judge *Hopkinson,* in the case of *Magee &* al. v. *The Master of the ship Moss,* 1 *Gilpin* 233. "I have," says he, "declared, that I will not countenance the practice of thrusting our seamen into foreign gaols, by the captain, through the influence that he may have with our consuls, or other officers, in a foreign port. It is always a most severe punishment, and, in some climates, dangerous to health and life. The punishment which the law authorizes the master to inflict on board of his vessel, by personal correction, by

imprisonment and other privations, is generally sufficient for all the purposes of discipline. It should be only in a case of some pressing necessity — of some danger to the vessel, or her master, or crew — that the men should be imprisoned on shore." We do not, therefore, hesitate in saying, that the *principle recognized by the court at the circuit, was correct.*

It was also objected, that the doctrine was laid down in such general terms, that the jury might misapply it. But certainly the jury were competent to judge what acts on board a vessel were flagrant offences, and whether from the temper exhibited by the offender and his conduct, there existed a pressing necessity for his removal from the ship. This was to be determined, by a review of his conduct during the voyage, and the peculiar disposition he manifested at the time of the offence particularly complained of. Having laid down the general principles, which regulate the conduct of the master, it was proper to leave to the jury the question whether the defendant had conformed to them. Had the judge gone further, the objection would have been, that he had invaded the province of the jury.

We are satisfied that the motion for a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.